AMERICAN STATES LIFE INSURANCE COMPANY, APPELLEE, V. WILLIAM L. RICHARDSON ET AL., APPELLANTS.

FILED JANUARY 7, 1936. No. 29423.

*John J. Ledwith* and *Herman Ginsburg*, for appellants.

*Frank M. Johnson* and *Perry, Van Pelt & Marti*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

ROSE, J.

This is a suit in equity to foreclose a 1,400-dollar mortgage on improved lots of land in Lancaster county. The note and the mortgage were dated December 1, 1931. The American States Life Insurance Company, plaintiff, was mortgagee, and William L. Richardson and Evelyn Richardson, husband and wife, defendants, were mortgagors. The district court upon a trial of the cause decreed a foreclosure of the mortgage for the full amount of the, principal and interest. Defendants appealed.

William L. Richardson, defendant, hereinafter called "agent," had been engaged in selling life insurance for plaintiff on commissions. The principal sum of $1,400 which defendants promised in their note and mortgage to pay to plaintiff included two items, in round numbers, as follows: Payment by plaintiff of two former mortgages on the lots encumbered by the mortgage in suit, $500; sum of advancements charged by plaintiff to its agent in excess of the latter's commissions, $900.

For the purposes of the appeal defendants have reduced the issues to the following propositions: The 500-dollar payment discharging the two former mortgages against the real estate of the agent was the only consideration for the note and mortgage in suit. The 900-dollar item consisted of advancements previously charged against his account for commissions. There was no express agreement to refund advancements in excess of commissions. Consequently, there was no legal liability for repayment of any advancements. Since a mortgage challenged for

want of consideration can only be enforced to the extent of the existing debt, the judgment herein must be limited to $500 with interest. In support of these propositions defendants invoke the following principle of law:

"In the absence of a special agreement, an agent who receives advances on account of commissions cannot be held to a personal liability for such advances, although the commissions earned by him do not equal the advances, and although his employment has ceased." 2 C. J. 787.

Counsel for defendants, with commendable diligence, have cited cases in which this rule has been adopted. There seems, however, to be a diversity of judicial opinion on the subject, some courts holding that advances to an agent in excess of his commissions imply an agreement for repayment to that extent. In the recent case of *Shaler Umbrella Co. v. Blow*, 199 Wis. 489, 227 N. W. 1, the supreme court of that state cited cases in which diverse views were expressed. Which rule should be adopted in Nebraska, however, seems immaterial under the evidence. The present controversy is not an action at law to recover advances in excess of commissions, but is a suit in equity to foreclose a mortgage for the amount of money paid to discharge prior mortgages and for charges against the agent for advances in excess of commissions.

The agent testified in substance: The note and the mortgage dated December 1, 1931, were executed. He was then in the employ of plaintiff, writing insurance on commissions; began to work for plaintiff in March, 1931; had a verbal agrement with H. O. Hutson, agency manager of plaintiff. The agent's version of what Hutson said follows:

"Why, he told me to go up and go to work for him and he would take care of me and take care of my renewals and pay me 75% commission on life, 7½% renewals for nine years and it would be absolute, and that he would pay me $7 on thrift and he would give me 5% renewals for five years, and I could have the overwriting on any agent I appointed beneath that amount."

He testified further, in effect: Hutson said he would take care of advancements to be charged against commissions which became matters of credit and debit with advancements; had a debit of about $1,000 December 1, 1931; mortgage was not executed on that date, but nearer the end of the year; Hutson said that he wanted the account "cleaned up," because it was the end of the year; that the mortgage would be paid by credits for commissions; that commissions were sufficient to pay the mortgage.

Though the agent said he started to work for plaintiff in March, 1931, he did not testify to oral terms of employment until May 31, 1934. He did not produce any books of account or other writings showing that his commissions equaled his advances when he executed the note and the mortgage or that advances in excess of commissions were not to be refunded. He admitted that he then owed plaintiff $1,400 on the basis of debits for advances charged against commissions and that he had been asked for a settlement before the end of the year 1931. December 1, 1931, he signed and verified by oath an application to plaintiff for a loan of $1,400 to be secured by mortgage and life insurance. In the note he promised to pay $1,400. He secured his promise by mortgage. He signed a written contract of agency, between himself and plaintiff, dated March 9, 1931, which contained the following provision:

"If this contract be terminated by either party before September 1, 1933, no renewal commissions are to be paid on business written by said agent on business written prior to September 1, 1932."

From January or February, 1932, until September, 1932, he was not in the employ of plaintiff. He said that he entered into the written contract of employment about September 1, 1932, and received a copy of it, but that it had been dated back to March 9, 1931, a fact unknown to him at the time, not having read what he signed; that he attempted to organize an insurance company of his

own, but instead became agency manager of it; that he only wrote one policy under the written contract of employment. There is nothing to show that he ever made any effort to reform the application for a loan or the note or the mortgage or the written contract of employment in accordance with his understanding of their true import. He did not prove fraud on the part of plaintiff nor mutual mistake of the parties in the procuring of the note and the mortgage.

The president of plaintiff testified positively that the balance of $1,400 was approximately the amount of money owing by the agent to plaintiff when the note and the mortgage were executed, as shown by plaintiff's books of account; that the agent owed a total of approximately $1,400 which he agreed to pay by giving a mortgage on his property; that his account was credited with $1,400. The written instruments which the agent signed years before he testified as a witness herein are in harmony with plaintiff's evidence and cause of action. If there were any controversy over the debt owing by the agent to plaintiff when the note and the mortgage were executed, it was settled, as indicated by those instruments, according to a preponderance of the evidence. If there were then no such controversy, the proper finding from all the evidence is that the parties mutually understood that advances in excess of commissions were debts owing by the agent to plaintiff. In either view there was a settlement of accounts without fraud or mistake. A settlement of accounts between principal and agent is generally binding on the agent in absence of fraud or mistake. 2 C. J. 786. The findings of fact on appeal are in favor of plaintiff.

AFFIRMED.